

# United States Bankruptcy Court
# for the District of Oregon

**Albert E. Radcliffe, Judge**　　　405 East Eighth Avenue, Suite 2600　　　(541) 431-4050
Virginia H. Denney, Judicial Assistant　　　Eugene, Oregon 97401　　　FAX: (541) 431-4047
Howard J. Newman, Law Clerk

September 29, 2008

Mr. James MacAfee
1265 Waller Street., S.E.
Salem, OR 97302

Mr. Ronald Sticka
PO Box 11038
Eugene, OR 97440

Ms Gail Geiger
Office of the U. S. Trustee
405 East 8th Avenue, Suite 1100
Eugene, OR 97401

RE:　　STAPLES, John & Catherine; Case No. 06-62144-aer7
　　　　Issues for Upcoming Hearings

Counsel:

      On September 23, 2008, I conducted a hearing in the above-referenced case on the Trustee's objection to the Debtors' claim of homestead exemption in property located on Verda Lane in Keizer. At that hearing, based on a review of the file, I expressed certain concerns and announced that both the pending exemption matter and the court's own show cause as to dismissal for abuse[1] would be set for an evidentiary hearing. This letter's purpose is to expand upon those concerns to give the parties notice in preparation for the evidentiary hearing. The issues I raise are in addition to the issue raised by the Chapter 7 Trustee. As always with such § 707(b) matters, any party in interest may adduce evidence showing that administration in Chapter 7 (including a significant return for unsecured creditors) will benefit parties in interest more than dismissal.

      The following facts appear from review of the file.

---

[1] See, 11 U.S.C. § 707(b)(1); FRBP 1017(e)(2)

This case was filed as a Chapter 13 on October 24, 2006. Debtors' Petition listed their street address as being on Verda Lane. Schedule A however only listed a property on Rural Ave. in Salem, as being owned by deed by both Debtors. Debtors' Schedule C claimed the Rural Ave. property exempt as a homestead. Their summary of debt listed $6,000 in priority claims and $28,350 in general unsecured claims. Form B22C indicated on Line 4 that Debtors averaged $650/mo. in rental income in the 6 months prior to the filing; Line 59 indicated they were no longer receiving that income. Their plan dated October 23, 2006, proposed to cure an arrearage to Ocwen Loan Servicing on the Rural Ave. property and maintain regular payments to Ocwen. The plan proposed to pay approximately 49% to general unsecured creditors. It had no "best interests" amount. The plan was confirmed on January 19, 2007, with amendments in ¶ 11 of the confirmation order. Debtors fell behind to Ocwen and entered into a stipulated order re: relief from stay on February 6, 2007. Debtors defaulted under the stipulated order and on May 17, 2007, Ocwen was granted relief from stay. On August 16, 2007, Debtors noticed an intent to sell the Rural Ave property, describing it as their "primary residence." The sale was for the amount owing "to avoid a foreclosure on their credit history." No one objected, and the property was sold. In March, 2008, the Chapter 13 Trustee moved to dismiss for default in plan payments. Debtors responded, but before hearing, moved to convert to Chapter 7. The case was converted to Chapter 7 on June 17, 2008.

In their conversion schedules filed on July 2, 2008, Debtors listed the Verda Lane property on Schedule A, with Ms Staples owning a 1/3 interest by intestate succession. The property was valued at $160,000 with $9,000 in liens against it. Schedule D notes the liens as Marion County property taxes. Schedule C claims a $39,600 joint homestead exemption. In SOFA #10, Debtors indicate they sold the rental house on Rural Ave. in August, 2007, through a notice of sale. SOFA #2 lists $129,000 in income in 2007 in "Depreciation-Recapture Capital Gains" noting the rental house was sold in the Chapter 13. The UST has filed a statement declining to file a § 707(b) motion. In it, the UST advises that at the Ch. 7 § 341 mtg, Debtors testified they no longer had rental income as the property from which that income was derived was sold in the Ch. 13 portion of the case.

As noted, the Chapter 7 Trustee objected to the joint claim of homestead on grounds that only Ms Staples was entitled to the exemption. In their recently filed request for hearing on the Trustee's objection, Debtors state that Ms Staples "inherited the current homestead from her now-deceased mother by intestate succession on September 18, 1998." They further indicate that "[b]oth Debtors have lived in the homestead as husband and wife since before wife's mother died." The request for hearing goes on to state facts supporting Mr. Staples' claim to an equitable interest in the property.

The court's concerns are obvious. If Debtors have had an interest in the Verda Lane property since 1998 why didn't they list it on Schedule A in the Chapter 13 portion of the case? If the valuation and liens against that property were remotely the same then as they are presently scheduled, under the best interests of creditors test, it appears their plan should have been a 100% plan. Further, if Debtors have indeed "lived in the [Verda Lane] homestead as husband and wife since before wife's mother died" was their original homestead claim in the Rural Ave. property made in good faith? Also, there is at least an inference from the Chapter 7 SOFA and their testimony at the Chapter 7 § 341(a) meeting (as represented by the UST), that at some point in the

Chapter 13 case Debtors rented out the Rural Ave. property. Did this, in fact, occur and if so, was that income large enough to require reporting to the Chapter 13 Trustee as required by ¶ 2 of the Confirmation Order? Finally, after neglecting to schedule it originally, is Debtors' homestead exemption claim in the Verda Lane property made in good faith? All of these inquiries impact the totality of the circumstances for "abuse" under § 707(b)(3)(B).[2] What's more, Debtors' failure to originally schedule the Verda Lane property may impact their ability to now claim the exemption.[3]

On a purely legal issue, if Debtors will be arguing that the snapshot of time for determining their present homestead claim is the date of conversion rather than filing,[4] they should file a brief on the issue at least 14 days before the evidentiary hearing, after which any party in interest has 7 days to respond thereto.

The parties will be receiving separate notice of the continued hearing on the objection to exemption and a separate Order to Show Cause re: dismissal for abuse.

> Very truly yours,
>
> ALBERT E. RADCLIFFE
> Bankruptcy Judge

AER:vhd

---

[2] I recognize that Form B22A filed in the Chapter 7 indicates the presumption of abuse arises under § 707(b)(2). However, for purposes of the hearing on the Order to Show Cause, I am willing to accept the UST's conclusion that the § 707(b)(2) presumption has essentially been rebutted. Thus the parties should concentrate on the "totality of the circumstances" test under § 707(b)(3)(B).

[3] See, In Re Arnold, 252 B.R. 778 (9th Cir. B.A.P. 2000) (court may deny leave to amend schedules on a showing of debtor's bad faith or prejudice to creditors); Matter of Doan, 673 F.2d 831 (11th Cir. 1982) (concealment of asset bars exemption of that asset); In re Cogliano, 355 B.R. 792 (9th Cir. B.A.P. 2006) (same).

[4] See, In re Winchester, 46 B.R. 492 (9th Cir. B.A.P. (Or.) 1984) (in case filed as a Chapter 13 and converted to Chapter 7, exemptions determined on date of conversion); In Re Alderman,195 B.R. 106 (9th Cir. B.A.P. (Mont.) 1996) (same); but see, In Re Weed, 221 B.R. 256 (Bankr. D. Nev. 1998) (holding Winchester and Alderman have been abrogated by the effect of the 1994 amendments to § 348).